Filed 9/2/14  P. v. Hanson CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RANDY ALLAN HANSON,<br><br>    Defendant and Appellant. | 2d Crim. No. B249297<br>(Super. Ct. No. F478245)<br>(San Luis Obispo County) |

Randy Allan Hanson appeals a three-year "criminal protective order" issued as a condition of probation after his conviction of assault (Pen. Code, § 240),[1] a misdemeanor, and battery with serious bodily injury, a felony (§ 243, subd. (d)).  We conclude, among other things, that the trial court did not err by imposing a stay-away condition of probation and issuing a separate criminal protective order.  We affirm.

### FACTS

On the evening of August 3, 2012, James Kelsey was a passenger in a limousine which transported him and others to "Harry's Bar."  Kelsey went into the bar. He later left and walked back to the limousine.  The driver opened the limousine door to let Kelsey in.  Hanson was inside "slouching."  Kelsey "tapped him on the shoulder" and asked Hanson, "'[H]ey, can you move over so we can all get in?'"  Kelsey testified, "[T]he

---

[1] All statutory references are to the Penal Code.

next thing I knew I felt an impact . . . ."  Hanson hit him with a beer bottle on the nose. Kelsey was bleeding and he felt pain between his eyes.

Hanson testified Kelsey approached him in the bar and said, "So you are the Raiders coach that got his ass kicked by Tom Cable."  Hanson responded, "Well, it really didn't happen that way and Cable is a fucking pussy."  Hanson left the bar and went to the limousine.  He was afraid because Kelsey was angry and dangerous.  Hanson locked the door.  Kelsey went to the limousine, began "banging on the limo" and told Hanson, "'I am Tom Cable's cousin, and I am going to kick your ass.'"  He struck Kelsey with the bottle because he "was trying to get away" from Kelsey.  He did not want to hurt him.

The jury found Hanson 1) "not guilty of the crime of Assault with a Deadly Weapon," but "guilty of the lesser included offense of Assault Upon a Person," and 2) guilty of battery with serious bodily injury.  It found not true the allegation that Hanson committed great bodily injury.

At the sentencing hearing, the trial court suspended imposition of sentence and placed Hanson on formal probation for three years.  As a probation condition, Hanson was "not [to] have any direct or indirect contact with James Kelsey."  The court also issued a three-year criminal protective order prohibiting Hanson from contacting Kelsey.  At the sentencing hearing, the court said that if Hanson violated the order, he could face "additional criminal charges."

DISCUSSION

*The Protective Order*

Hanson challenges the validity of the criminal protective order.  The People contend he forfeited this issue because he did not raise it in the trial court.  We agree. (*People v. Welch* (1993) 5 Cal.4th 228, 234-237.)  But even on the merits, the result is the same.

Trial courts have "broad discretion" under section 1203.1 to impose probation conditions that protect crime victims by ordering defendants to stay away from them.  (*People v. Selga* (2008) 162 Cal.App.4th 113, 120.)

2

Hanson does not contest the probation condition that he stays away from Kelsey. He claims, however, the trial court lacked authority to also issue the criminal protective order. We disagree.

This contention was rejected in *People v. Petty* (2013) 213 Cal.App.4th 1410, 1424. There the Court of Appeal said a trial court's "use of a stay-away order, in addition to a no-contact condition of probation, was lawful." (*Ibid.*) It rejected the claim that this was unnecessary duplication. The court said, "Whatever duplication exists provides no reason to strike the order. The stay-away order makes more concrete the no-contact and no-harassment conditions of probation and sets up an additional incentive for defendant to avoid future criminal violation of those conditions." (*Ibid.*)

Hanson contends the protective order was not a probation condition. He notes the court checked a box on the order indicating it was issued under section 136.2. He claims under *People v. Selga*, *supra*, 162 Cal.App.4th 113, the order is void because this statutory provision does not involve probation conditions.

But *Selga* is distinguishable. There a trial court issued a criminal protective order under section 136.2 with the expectation that the order would remain in effect after the completion of the criminal proceedings. The Court of Appeal struck the order. It said, "[T]he only purpose of orders under section 136.2 'is to protect victims and witnesses in connection with the criminal proceeding . . . .'" (*People v. Selga*, *supra*, 162 Cal.App.4th at p. 118.) Consequently, "the protective orders issued under section 136.2 were operative only during the pendency of the criminal proceedings and as prejudgment orders." (*Id.* at pp. 118-119.) The court therefore remanded the case to the trial court "to exercise its discretion on whether to impose a similar stay-away order as a condition of probation under Penal Code section 1203.1." (*Id.* at p. 121.)

Here, unlike *Selga*, the trial court issued the order as a probation condition. The box the court checked on the order indicates that the protective order is a "probation condition order." The Judicial Council form contains a mistake. It has a pre-printed reference to section 136.2 near that box. There should have been a reference to section 1203.1. But this does not change the nature of the order as a probation condition.

Hanson claims the trial court's remark about "additional criminal charges" suggests that, in addition to what he would receive for violating probation, he would also be subject to separate contempt charges for violating the protective order. But that is not the case.

"'[A]n adult whose probation is revoked cannot be subjected to any greater punishment than would be allowed for the underlying offense.'" (*People v. Johnson* (1993) 20 Cal.App.4th 106, 111.) "The ramifications of a violation of a condition of probation are . . . that probation may be revoked. Following revocation of probation, a defendant is to receive no greater sentence than that he could have received at the time probation was granted, and the length of a sentence shall be based on circumstances as they existed at the time probation was granted." (*Id*. at p. 112.) "Contempt of court should not be superimposed as an additional remedy in a probation violation setting . . . .'" (*Ibid*.)

The trial court's remark was an attempt to discourage Hanson from violating the no contact condition. The choice of words may have been poor, but the result does not change because the protective order was properly issued. Kelsey was the victim of a violent assault. The condition and order were directly related to Hanson's offense and were intended to deter future criminality. There was no error.

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

4

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Shawn McGahey Webb, Supervising Deputy Attorney General, David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.